# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| WASHINGTON MUTUAL BANK, | Civil No. 05-1422 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| CHAD L. BELVILLE, LAWYERS TITLE SERVICES CORPORATION, and ATTORNEY'S TITLE INSURANCE FUND, INC., | **ORDER ADOPTING REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |
| and | |
| ATTORNEY'S TITLE INSURANCE FUND, INC., | |
| Cross-Claimant, | |
| v. | |
| CHAD L. BELVILLE and LAWYERS TITLE SERVICES CORPORATION, | |
| Cross-Defendants. | |

Kurt M. Mitchell and Keith S. Moheban, **LEONARD, STREET AND DEINARD, P.A.**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for plaintiff.

Chad L. Belville, 304 East Beth Drive, Phoenix, AZ 85042, defendant and cross-defendant *pro se*.

Matthew Jones and Thomas B. Olson, **OLSON & LUCAS**, One Corporate Center I, 7401 Metro Boulevard, Suite 575, Edina, MN  55439, for defendant and cross-claimant Attorney's Title Insurance Fund, Inc.[1]

Defendant Lawyers Title Services Corporation issued a check to plaintiff Washington Mutual Bank ("Washington Mutual") in the amount of $466,432.46.  When Washington Mutual tried to cash the check, the check bounced.  Washington Mutual brought an action against defendants for payment under the terms of the dishonored check, and filed the instant motion for summary judgment.  In a Report and Recommendation dated July 5, 2007, United States Magistrate Judge Franklin L. Noel recommended that this Court grant plaintiff's motion.  Defendant Chad Belville timely objected to the Report and Recommendation.  This Court has conducted a *de novo* review of the objections under 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b).  For the reasons discussed below, the Court adopts the Report and Recommendation.

## BACKGROUND

Defendant Belville is the sole shareholder, officer, and director of defendant Lawyers Title Services Corporation, an Iowa company that provides title services in Minnesota.  Belville issued title commitments and sold title insurance as an agent of Attorneys Title Guaranty Fund ("ATGF").  Belville also maintained numerous bank accounts containing closing funds associated with real estate transactions.  One such account ("Northwoods 1005209") was held by Northwoods State Bank in the name of

---

[1] Plaintiff Washington Mutual settled its claims as to defendant Attorney's Title Insurance Fund.  Attorney's Title Insurance Fund filed a cross-claim against defendants Chad Belville and Lawyer Title Service Corporation, which remains pending in this case.

defendant Lawyers Title Services. Belville maintained a $5 million balance in the Northwoods 1005209 account so that he could earn interest on the real estate closing funds that were held in the account. Belville also borrowed $170,000 from the account to finance a townhouse that he purchased for himself. Between July 2001 and April 2002, approximately $206 million dollars cycled through the Northwoods 1005209 account.

As his title business grew, Belville decided that he needed to reconcile his various bank accounts, and he hired an accountant to assist him. In November 2001, ten checks bounced that had been written on the Northwoods 1005209 account. Several months later, in March 2002, Belville provided title insurance to Tim and Suzanne Lindquist, who had decided to refinance their home. The Lindquist's old mortgage was held by plaintiff Washington Mutual. On March 29, 2002, funds for the Lindquist's new mortgage were deposited into the Northwoods 1005209 account. On April 2, 2002, a check for $466,432.46 was issued from the Northwoods 1005209 account to Washington Mutual to satisfy the Lindquist's old mortgage. The check was signed by Belville. Washington Mutual attempted to cash the check, but the check was returned because there were insufficient funds in the Northwoods 1005209 account to cover the check.

Belville soon discovered that approximately $1 million was missing from his accounts. Belville notified ATGF of the shortfall, and ATGF sent an investigator to meet with him. The investigator instructed Belville to liquidate all of his accounts and to turn the funds over to ATGF. ATGF then took control of Belville's money and business records, and made payments to all of Belville's creditors with the exception of Washington Mutual.

Washington Mutual brought this action against Belville, Lawyers Title Services, ATGF, and ATGF's parent company Attorney's Title Insurance Fund ("ATIF"), seeking to recover on the dishonored check. Washington Mutual settled its claims against ATGF and ATIF, and filed the instant motion for summary judgment against Belville and Lawyers Title Services.

The Magistrate Judge found that Lawyers Title Services, as the issuer of the dishonored check, was required under Minnesota law to make payment according to the terms of the check. *See* Minn. Stat. § 336.3-414(b). The Magistrate Judge further determined that Lawyers Title Services functioned as a mere instrumentality of Belville, and that it would be fundamentally unfair to Washington Mutual if Belville were protected by the corporate veil. As such, the Magistrate Judge recommended that the corporate veil be pierced and that liability for the dishonored check be imposed against Belville in the amount of $206,432.46.[2] Finally, the Magistrate Judge found that Washington Mutual was not entitled to attorney's fees related to litigation with ATGF and ATIF, but that it was entitled to prejudgment interest on the amount of the dishonored check pursuant to Minn. Stat. § 549.09. Belville filed these objections to the Report and Recommendation.

---

[2] The Magistrate Judge determined Belville's liability as the amount of the dishonored check ($466,432.46) less the $260,000.00 paid in the settlement with ATIF and ATGF.

# ANALYSIS

## I.   STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   OBJECTIONS TO THE REPORT AND RECOMMENDATION

### A.   Adequacy of Notice

Belville first objects on grounds that he was not properly served with notice of the hearing date before the Magistrate Judge, and that this lack of notice prejudiced his ability to effectively argue his case before the Magistrate Judge.  Because he did not receive adequate notice of the hearing, Belville argues, he did not reschedule his airfare or hotel reservations, and he was therefore "forced to appear unprepared by speakerphone."  (Def.'s Objections to Report and Recommendation, at 1.)

Service of pleadings and other papers is governed by Rule 5 of the Federal Rules of Civil Procedure.  Under Rule 5(a), "every written notice . . . shall be served upon each

of the parties." Service under Rule 5(a) may be made by "[m]ailing a copy to the last known address of the person to be served," and service by mail is "complete on mailing." Fed. R. Civ. P. 5(b)(2)(B). This Court issued an Order on April 17, 2007 referring the instant summary judgment motion to the Magistrate Judge. On April 18, 2007, Washington Mutual filed an Amended Notice of Motion for Summary Judgment, which noticed a hearing on the Motion for May 11, 2007 at 2:00 PM. *See* Docket No. 71. That same day, Washington Mutual filed a Certificate of Service certifying that a copy of the Amended Notice of Motion was sent via first class mail to Belville at two different Phoenix addresses. *See* Docket No. 72. In addition, counsel for Washington Mutual contacted Belville by telephone on April 24, 2007, and confirmed with Belville that the hearing had been set for May 11, 2007 before the Magistrate Judge. (Mitchell Aff. ¶ 3.)

The Court finds that Belville was properly served with the Amended Notice of Motion under Rule 5. As such, the Court need not address whether the absence of notice had any prejudicial effect on Belville's ability to adequately argue his case before the Magistrate Judge. The Court notes, however, that Belville had an adequate opportunity to defend against the summary judgment motion, having filed a memorandum in opposition to the summary judgment motion on April 10, 2007, well in advance of the hearing date. Further, Belville raises no new facts or arguments in his objections to the Report and Recommendation that would support his contention that his lack of notice or

appearance by speakerphone was prejudicial.[3]  Belville's objections to the Report and Recommendation are therefore overruled on this basis.

### B.     Assumption of Liability by ATGF and ATIF

Belville next argues that ATGF and ATIF assumed his liability when they took control of his money and business records.  According to Belville, this assumption of liability creates a genuine issue of material fact for the jury, and was not considered by the Magistrate Judge.

Contrary to Belville's assertions, however, the Magistrate Judge considered the assumption of liability by ATGF and ATIF, concluding that this was not a defense to Washington Mutual's claim but rather a possible basis for a claim against ATGF and ATIF.  Under the general rule of successor liability, where one company sells or otherwise transfers all of its assets to another company, the purchasing company is not liable for the debts and liabilities of the transferor.  *See J.F. Anderson Lumber Co. v. Myers*, 206 N.W.2d 365, 368-69 (Minn. 1973) (explaining the rule of successor liability in Minnesota).  Minnesota courts have crafted a narrow set of exceptions to this general rule, including instances in which the purchaser expressly or impliedly agrees to assume the debts of the transferor.  *Id.*  As such, the rule of successor liability does not relieve a transferor of liability, but merely sets forth those instances in which a transferee will be liable for the liabilities of the transferor.  *See id.*  Thus, while the rule of successor

---

[3] Belville argues, for example, that the proceedings were barely audible to him due to the poor quality of the speakerphone used in the hearing.  However, Belville's objections provide no additional facts or argument that would preclude summary judgment in favor of Washington Mutual, as discussed below.

liability may indeed provide Belville with a claim against ATGF and ATIF, it does not by itself create a genuine issue of material fact precluding summary judgment in favor of Washington Mutual.

The Court finds that summary judgment in favor of Washington Mutual is appropriate. It is undisputed that Lawyer Title Services issued a check to Washington Mutual in the amount of $466,432.46, and that Lawyer Title Services failed to make payment on the check. Under Minnesota law, Lawyer Title Services is obligated to make payment to Washington Mutual according to the terms of the dishonored check. *See* Minn. Stat. § 336.3-414(b) (setting forth obligations of the drawer of a dishonored check).

The Court further finds that the corporate veil should be pierced and liability imposed upon Belville for the dishonored check. Under Minnesota law, the corporate veil should be pierced if the corporation functions as a mere instrumentality of the principals, and injustice or unfairness would result if the corporate veil were left intact. *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997); *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979). Belville has set forth no facts to rebut evidence that he used Lawyer Title Services as a mere instrumentality for his own personal profit. It is undisputed that Belville was the sole shareholder, director, and officer of Lawyer Title Services, that he personally earned interest on funds deposited in a Lawyer Title Services bank account, and that he borrowed funds from the account for his own personal use. Additionally, Belville has produced no evidence of corporate records or appropriate capitalization of Lawyer Title Services. *See Victoria Elevator*, 283

N.W.2d at 512 (setting forth factors to be considered in determining whether corporation functioned as a mere instrumentality of the principals).  In light of this evidence, the Magistrate Judge properly concluded that Lawyer Title Services was no more than a name for a bank account, that the corporate veil should be pierced, and that liability for the dishonored check should be imposed both on Lawyer Title Services and on Belville.  The Court agrees with the Magistrate Judge that it would be fundamentally unfair to allow Belville to escape liability through the use of a corporation that was merely a name for a bank account, when he personally profited from that account.  For these reasons, the Court grants Washington Mutual's motion for summary judgment.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** defendant Belville's objections [Docket No. 76] and **ADOPTS** the Amended Report and Recommendation dated July 5, 2007 [Docket No. 75].  **IT IS HEREBY ORDERED** that plaintiff's Motion for Summary Judgment [Docket No. 55] is **GRANTED**, as follows:

1.     Judgment shall be entered in favor of plaintiff Washington Mutual and against defendant Lawyers Title Services and Belville in the amount of $206,432.46.

2.     Plaintiff shall be awarded prejudgment interest on the amount of damages pursuant to Minn. Stat. § 549.09.  Plaintiff shall file with the Court a separate request for prejudgment interest showing its method of calculation and any relevant supporting documentation.  Defendant Belville shall be permitted to file a response to plaintiff's

request within fourteen (14) days of the date that plaintiff files its request for prejudgment interest.

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff Washington Mutual against defendant Lawyers Title Services and Belville in the amount of $206,432.46.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


DATED:   October 30, 2007                         s/ John R. Tunheim   
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM  
                                                                United States District Judge